UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

LAURA VANDERMEULEN,
*Plaintiff*,

v.

No. 1:24-cv-344 (MSN/IDD)

LOUDOUN COUNTY SCHOOL BOARD, et
al.,
*Defendants*.

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Scott Ziegler's Motion to Dismiss (ECF 22) and Defendants Loudoun County School Board and Aaron Spence's Motion to Dismiss (ECF 25). Plaintiff Laura Vandermeulen was a special education teacher's assistant at Loudoun County Public Schools ("LCPS"). After complaining to her supervisors that a student was repeatedly groping her, school administrators allegedly disregarded her concerns. Vandermeulen then turned to a public forum—first conveying her story to a political activist who spoke on her behalf, and then later speaking herself—at a Loudoun County School Board meeting to voice her concerns. Vandermeulen was terminated shortly thereafter, purportedly for violating policies regarding confidential student information. Now, she asserts a variety of claims under Title VII, Title IX, and 42 U.S.C. § 1983 against the Loudoun County School Board, Aaron Spence (the current superintendent), and Scott Ziegler (the former superintendent).

The motions will be granted in part and denied in part. Because Vandermeulen's Title VII claims are untimely, they will be dismissed. And because she has failed to state a due process or equal protection claim, those claims will be dismissed as well. But Vandermeulen has plausibly

alleged her Title IX claims and First Amendment claims, so the motions will be denied with respect to those claims.

## I.      BACKGROUND[1]

Vandermeulen worked at an elementary school in Loudoun County Public Schools as a special education teacher's assistant from February 2019 until she was terminated in June 2022. ECF 20 ("First Amended Complaint" or "FAC") ¶¶ 19, 54.

In the spring of 2022, one of Vandermeulen's students "repeatedly grabbed and groped" Vandermeulen and the teacher in the classroom, Erin Brooks, "in their genital and breast areas" more than "fifty times per day on most days." *Id.* ¶¶ 27-28. Vandermeulen and Brooks sought help from school administrators, but these calls for help were "dismissed and ignored … over the course of several months," according to Vandermeulen. *Id.* ¶ 32. Because LCPS rules forbade staff from physically grabbing students, even under circumstances where students assault teachers, administrators suggested that Vandermeulen purchase an apron to cover herself over her clothes, hold a cardboard cutout in front of her genitals when interacting with the student, and implement a behavior improvement plan. *Id.* ¶¶ 34-35. LCPS told Vandermeulen to "hang in there." *Id.* ¶ 36. It did not discipline or relocate the student. *Id.* ¶ 37. Vandermeulen's attempts to implement a behavior improvement plan were unsuccessful, and the student's inappropriate touching persisted. *Id.* ¶ 39.

On March 14, 2022, Brooks complained to the Title IX office at LCPS on behalf of her and Vandermeulen. FAC ¶ 40. Two days later, the Title IX office responded to Brooks that they "didn't know what to do here" and that the women should "work with school staff." *Id.* ¶ 47.

---

[1] For purposes of these motions to dismiss, the Court assumes the truth of the allegations in the Amended Complaint and construes them in the light most favorable to Vandermeulen.

Around this time, Vandermeulen shared her complaints with a political activist, Ian Prior. FAC ¶ 45. She told Prior that a student was repeatedly groping her and that LCPS had not provided any help. *Id.* ¶ 46. Prior then spoke on behalf of Vandermeulen and Brooks at a School Board meeting on March 22, 2022, without identifying the two women, claiming that LCPS was not following Title IX processes. *Id.* ¶ 50. According to Vandermeulen, both Diane Mackey (the principal of the school in which Vandermeulen worked) and Scott Ziegler (the superintendent at the time) knew that Prior was referring to Vandermeulen and Brooks, and they "became enraged" that Vandermeulen shared her issues with Prior because the School Board had been in the national spotlight over its handling of other sexual assault complaints and public criticism. *Id.* ¶ 54; *see id.* ¶¶ 8-18; 51-53.

In the days that followed, Mackey repeatedly observed Vandermeulen and Brooks in their classroom, and she gave Brooks her first negative performance evaluation. FAC ¶¶ 58, 61. Brooks also filed a formal Title IX complaint, which was dismissed without investigation. *Id.* ¶ 62. On March 29, 2022, Mackey accused Brooks of disseminating confidential information, and LCPS opened a formal investigation into Vandermeulen for "receiving confidential student information." *Id.* ¶ 64.

On April 5, 2022, Vandermeulen "expressed her desire to file her own Title IX complaint, including for retaliation." FAC ¶ 67. About a month later, she received her first negative performance review, which mirrored Brooks's negative review "nearly verbatim." *Id.* ¶ 68. Vandermeulen alleges that around this time, Mackey had a call with Ziegler about the two women, in which they decided to "get rid" of Vandermeulen. *Id.* ¶ 71.

On May 12, 2022, Ziegler wrote to Vandermeulen that she was terminated and that her last day of employment would be June 17, 2022. FAC ¶ 72. When Vandermeulen spoke to Mackey

about the letter, Mackey told her that "it didn't have to be like this but you made choices." *Id.* ¶ 73. The next week, Vandermeulen received a letter saying that she violated LCPS policy by receiving certain emails from Brooks. *Id.* ¶ 77.

Vandermeulen then spoke at a School Board meeting on June 7, 2022, to complain about LCPS retaliating against her. FAC ¶ 78. The next day, she gave a television news interview about the retaliation. *Id.* ¶ 79. The following day after that, on June 9, LCPS placed Vandermeulen on administrative leave for the remainder of her employment, claiming she was subject to another investigation for violating the same policy. *Id.* ¶¶ 80-81. Vandermeulen's employment ended on June 18, 2023.[2]

Vandermeulen brings several claims against the Loudoun County School Board, Ziegler, and Spence in his official capacity. As to claims against both Ziegler and Spence, Vandermeulen brings an equal protection, First Amendment, and due process claim under Section 1983 (Counts V-X). As to the School Board, Vandermeulen brings Title VII claims for hostile work environment and retaliation (Counts I-II) and Title IX claims for deliberate indifference and retaliation (Counts III-IV).

Defendant Ziegler moved to dismiss the claims against him, and the School Board partially moved to dismiss all the claims against it and Spence, except for Count IV, the Title IX retaliation claim. After full briefing, these motions are ripe for resolution.

---

[2] Vandermeulen alleges that on "September 28, 2023, Defendant Ziegler was found guilty of retaliatory discharge of Ms. Brooks and Ms. Vandermeulen." FAC ¶ 85. The Court takes judicial notice of this state court proceeding and notes that Ziegler's conviction has since been set aside over an issue relating to the jury instructions. The case is set for a retrial in February 2025. *See* Case No. CR00037874-00 (Loudoun Cnty. Cir. Ct.).

## II.     ANALYSIS

### A.       Title VII Claims (Counts I-II)

Vandermeulen brings a hostile work environment claim and a retaliation claim under Title VII against the School Board. Because these claims were not timely exhausted, however, they must be dismissed before consideration of the merits.

Before bringing a Title VII claim in federal court, a plaintiff must file a timely charge before the Equal Employment Opportunity Commission ("EEOC") within 300 days from the last date of alleged discrimination. *See* 42 U.S.C. § 2000e-5(e)(1); *Edwards v. Murphy-Brown, L.L.C.*, 760 F. Supp. 2d 607, 619 (E.D. Va. 2011). "If the statutory time period elapses between the allegedly discriminatory incident and the filing of the EEOC charge, the litigant is forever barred form Title VII relief." *Id.*

Vandermeulen did not file her EEOC charge until April 14, 2023, more than 300 days after she was told she would be terminated and more than 300 days after she was removed from the classroom.[3] *See* FAC ¶¶ 72, 87. Vandermeulen was informed on May 12, 2022, that "she was terminated, that her last date of employment would be June 17, 2022, and that her contract would not be renewed." FAC ¶ 72. And she was placed on administrative leave—and therefore removed the classroom—on June 9, 2022. FAC ¶ 80.

As to Vandermeulen's retaliation claim, a Title VII claim based upon termination accrues, and "the filing period begins to run[,] from the time at which the employee is *informed* of the allegedly discriminatory employment decision, regardless of when the effects of that decision come to fruition." *Price v. Litton Bus. Sys. Inc.*, 694 F.2d 963, 965 (4th Cir. 1982) (emphasis

---

[3] Although the EEOC charge is dated by the EEOC as received on April 17, 2023, Vandermeulen alleges that she in fact notified the EEOC of the factual basis of her charge on April 14, 2023. FAC ¶ 87 n.4. Therefore, for purposes of this motion, the Court will assume that Vandermeulen filed her charge on April 14, 2023. *See* 29 C.F.R. § 1601.12(b).

added). Vandermeulen argues that *Green v. Brennan*, 578 U.S. 547 (2016), abrogates that rule and instead requires courts to consider the date "the employee is fired" as the point of accrual. But *Green* is entirely consistent with *Price*. The Supreme Court in *Green* held that when an employee resigns in the face of intolerable discrimination, "the … clock … begins running only after the employee resigns," which the Supreme Court specified occurs "on the day he tells his employer, not his last day at work." *Green*, 578 U.S. at 564.

Because Vandermeulen was "informed" of her allegedly retaliatory termination on May 12, 2022, "the filing period beg[an] to run from" that date for her retaliation claim. *Price*, 694 F.2d at 965. Accordingly, she was required to file her EEOC charge no later than March 8, 2023—300 days after the date she was informed of her termination. Because she did not file her charge until April 14, 2023, however, her Title VII retaliation claim is time barred.

Vandermeulen's hostile work environment claim is also time barred. This claim is premised upon the School Board's failure to act upon her complaints about a student repeatedly groping her in class. Although this claim, too, likely accrued on the date she was notified of her termination, as that date was likely the last alleged discrete act contributing to the hostile environment, even assuming that Vandermeulen continued to be subjected to inappropriate touching until she was ultimately removed from the classroom, her hostile work environment claim accrued no later than June 9, 2022, the date Vandermeulen was removed from campus. FAC ¶ 80. Accordingly, Vandermeulen was required to file her charge no later than April 5, 2023, but because she did not file her charge until April 14, 2023, her hostile work environment claim is also time barred.

Counts I and II will therefore be dismissed with prejudice.

### B.      Title IX Claims (Counts III-IV)

Vandermeulen brings two Title IX claims against the School Board: deliberate indifference and retaliation.[4] The School Board moved to dismiss only the deliberate indifference claim (Count III). The School Board's motion will be denied as to Count III because Vandermeulen has plausibly alleged that the School Board was deliberately indifferent to her reports of harassment.

Title IX contains an implied right of action when a recipient of federal funds is deliberately indifferent to harassment. *See, e.g.*, *Davis v. Monroe Cnty. Bd. of Ed.*, 526 U.S. 629, 633 (1999) (deliberate indifference to "student-on-student" harassment); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277 (1998) (deliberate indifference to "teacher-on-student" harassment). In the context of peer harassment, the harassment must be severe, pervasive, and objectively offensive. *Davis*, 526 U.S. at 651. And deliberate indifference exists only where the school's "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id.* at 648. This bar is high, and "an institution is not normally liable for failing to cede to a harassment victim's specific remedial demands." *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 686 (4th Cir. 2018). After all, "a school may not be held liable under Title IX . . . for what its students do, but only for what is effectively an official decision by [the school] not to remedy [peer] harassment." *S.B. v. Bd. of Ed. of Hartford Cnty.*, 819 F.3d 69, 76-77 (4th Cir. 2016) (internal citations and quotation marks omitted).[5]

---

[4] Title IX provides, with limited exceptions, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Fourth Circuit has held that an implied right of action exists under Title IX for claims of employment discrimination on the basis of gender, including retaliation claims. *Preston v. Com. of Va. ex rel. New River Community College*, 31 F.3d 203, 206 (4th Cir. 1994); *see also North Haven Bd. of Educ. v. Bell*, 456 U.S. 512 (1982).

[5] Although these precedents do not expressly hold that there is an implied right of action for deliberate indifference to *student-on-teacher* harassment, there is at least some reason to believe that a deliberate indifference claim would extend to these circumstances in light of *Davis* (which held there is an implied right of action for deliberate indifference

At this stage, Vandermeulen has sufficiently alleged that the School Board was deliberately indifferent to her reports of sexual harassment by a student. To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). Vandermeulen has alleged that over the course of months a student groped her repeatedly, over fifty times per day, in the genital and breast areas and refused to stop the behavior (FAC ¶¶ 26-28); that the student knew of the sexual nature of his acts (*id.* ¶ 31); and that after complaining to administrators, the school suggested she buy an apron to cover herself over her clothes, hold cardboard in front of her genital area, and implement a "behavior improvement plan," which it knew Vandermeulen had already unsuccessfully attempted (*id.* ¶ 35). After none of these measures worked, Brooks filed a Title IX complaint on their behalf, and Vandermeulen spoke to Prior, who publicly conveyed the school's response to the issue. But before the school took any further action regarding Vandermeulen's complaints, it terminated her. Accepting these allegations as true and drawing all reasonable inferences in favor of Vandermeulen, she has sufficiently alleged that the school failed to institute any meaningful corrective measures over months in response to her complaints that she was repeatedly being groped daily, which is a "clearly unreasonable" response. *Hurley*, 911 F.3d at 703.

The School Board makes two arguments in response, neither of which are persuasive. First, as to the sufficiency of its response to Vandermeulen's complaints, it emphasizes that in the context of teaching students with special needs, it "has a more limited set of remedies available given that they must balance maintaining a nonhostile work environment with ensuring that children have access to public education." *Webster v. Chesterfield County Sch. Bd.*, 38 F.4th 404, 416 (4th Cir.

---

to student-on-student harassment) and *Preston* (which held that Title IX's protections extend to the employment discrimination context). The School Board does not argue otherwise.

2022). While that is certainly true, and may ultimately be critical at a later stage in this litigation, Vandermeulen has alleged that the School Board took no meaningful action at all in response to her reports of serious harassment. Second, the School Board argues that Vandermeulen has not sufficiently alleged that the student's harassing conduct was "because of sex," which is required for her to state a claim under Title IX. Instead, relying heavily on *Webster*, the School Board suggests that in these circumstances the student's behavior may have been a manifestation of his disability. Again, while that certainly could be true, Vandermeulen has sufficiently alleged otherwise. She alleges that the student "knew the sexual nature of his acts" (FAC ¶ 31), and it is reasonable to infer that allegation is correct based on Vandermeulen's allegations that the student touched her and Brooks only in the sexual areas of their bodies (*id.* ¶ 27). As in *Webster*, discovery may reveal otherwise, but it is premature at this stage for the Court to make a factual determination contrary to Vandermeulen's plausible allegations.

Accordingly, the motion to dismiss the deliberate indifference claim will be denied, and Counts III and IV will proceed.

## C.     Equal Protection Claims (Counts V-VI)

Vandermeulen brings equal protection claims under Section 1983 against Defendant Ziegler in his individual capacity (Count V) and Defendant Spence in his official capacity (Count VI).[6] These claims will be dismissed because Vandermeulen has not sufficiently alleged the requisite discriminatory intent.

---

[6] The claims against Spence in his official capacity amount to claims against the School Board. In these claims (Counts VI, VIII, and X), Vandermeulen seeks an injunction "clearing the record of the retaliatory discipline imposed upon her and a recission of Ms. Mackey's statement to all parents of LCPS students." FAC ¶ 135. In passing, Spence argues in his reply brief that Vandermeulen lacks standing for prospective injunctive relief because her claims concern past constitutional violations rather than ongoing ones. But because Vandermeulen alleges her termination letter stated she was "forever precluded from working for LCPS again," she has standing to pursue these claims. FAC ¶ 72.

The same deliberate indifference standard governs the Title IX claim and equal protection claim, except that the equal protection claim requires an additional showing of "discriminatory intent" on the part of Defendants. *Hurley*, 911 F.3d at 703. Under the Equal Protection Clause, a plaintiff must allege that: (1) she suffered "discriminatory peer harassment"; (2) the administrator responded to the harassment in a deliberately indifferent manner; and (3) the school administrator's response was motivated by discriminatory intent. *Id.* at 702-03.

This additional element is fatal to Vandermeulen's equal protection claims because she has not alleged that either Ziegler's or the School Board's response was motivated by discriminatory intent because of her sex. The gravamen of Vandermeulen's complaint is that the School Board did not take her reports seriously, and that after she spoke up about the problem publicly, it retaliated against her. But nowhere does Vandermeulen allege that the School Board or Ziegler did any of this because Vandermeulen is a woman. "A retaliation claim of this type thus does not implicate disparate treatment on the basis of a classification forbidden by the Equal Protection Clause." *Wilcox v. Lyons*, 970 F.3d 452, 460 (4th Cir. 2020).

Vandermeulen argues that because the School Board and Ziegler made "no effort to stop" the harassment, and in fact terminated her in retaliation, those are sufficient allegations of discriminatory intent. *See Hurley*, 911 F.3d at 703. But in *Hurley*, the complaint alleged that the defendant "ratified the 'right' of angry students to target female classmates with hateful, sexist, threatening harassment, free from any disciplinary consequences," by downplaying the significance of the harassment and threats. *Id.* Vandermeulen does not make similar allegations that allow for an inference of discriminatory intent, as opposed to merely retaliatory intent.

Because Vandermeulen has not plausibly alleged that Ziegler's or the School Board's actions were motivated by discriminatory intent, Counts V and VI will be dismissed with prejudice.[7]

### D.    First Amendment Claims (Counts VII-VIII)

Vandermeulen brings First Amendment retaliation claims under Section 1983 against Ziegler and the School Board, alleging that Defendants terminated her in retaliation after she spoke to Prior, a political activist, who publicly conveyed her complaints that LCPS was not following Title IX processes at a School Board meeting. FAC ¶¶ 45-46, 50.[8] To state a First Amendment retaliation claim, Vandermeulen must allege (1) that she spoke as a citizen on a matter of public concern; (2) that the employee's interests in expression outweigh the employer's interests; and (3) that there was a causal relationship between the speech and the adverse employment action. *Love-Lane v. Martin*, 355 F.3d 766, 776 (4th Cir. 2004). Defendants argue only that these claims should be dismissed because Vandermeulen's speech was not "on a matter of public concern." *Id.*

"Personal grievances" and "complaints about conditions of employment" are ordinarily "not matters of public concern." *Id.* (quoting *Stroman v. Colleton Cnty. Sch. Dist.*, 981 F.2d 152, 156 (4th Cir. 1992)). At the same time, however, "[t]o conclude…that a personal complaint about discrimination affecting only the complaining employee can never amount to an issue of public concern could improperly limit the range of speech that is protected by the First Amendment." *Campbell v. Galloway*, 483 F.3d 258, 269 (4th Cir. 2007).

Although Vandermeulen's speech related to her own personal employment grievances, she also alleges that she spoke in the context of a heated public debate about Defendants' handling of

---

[7] Vandermeulen already amended her complaint in response to Defendants' motions to dismiss.
[8] Vandermeulen herself also later spoke at a School Board meeting and on a national news program, but she did so only after she had been notified of her termination, and on these occasions, she spoke "about LCPS retaliating against her." FAC ¶¶ 78-79.

sexual assault complaints. She alleges that her speech followed a fall 2021 report by a national news outlet revealing that Ziegler had knowingly lied about not receiving a prior sexual assault complaint, sparking "national criticism." FAC ¶¶ 8-12. These allegations demonstrate the public may have been interested in the manner in which Defendants handle Title IX complaints concerning sexual assault and harassment. Indeed, after Vandermeulen later spoke before the School Board, a national news outlet interviewed her on a news program. FAC ¶ 79.

In this context, and at this stage where the Court must draw all reasonable inferences in Vandermeulen's favor, her speech involved "an issue of social, political, or other interest to [the] community" and is therefore protected. *Connick v. Myers*, 461 U.S. 138, 147 (1983). The motions to dismiss Counts VII and VIII will be denied.

### E.       Due Process Claims (Counts IX-X)

Finally, Vandermeulen brings procedural due process claims against Ziegler and the School Board, alleging that she was deprived of her property interest in public employment without sufficient process. To state a procedural due process claim, a plaintiff must allege: (1) that she had a constitutionally cognizable life, liberty, or property interest; (2) that she was deprived of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate. *Doe v. Va. Polytechnic Inst. & St. Univ.*, 77 F.4th 231, 236 (4th Cir. 2023).

These claims fail because, as an at-will employee, Vandermeulen did not have a constitutional property interest in her continued employment. For a public benefit to be a constitutionally protected property interest, "a person must have … a legitimate claim of entitlement to it." *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 79 (4th Cir. 2016). Vandermeulen admits, however, that her contract stated she was an "at-will" employee. FAC ¶ 169. Nonetheless, she argues that because Ziegler "had told the Loudoun County School Board (as

recounted by one School Board member during Defendant Ziegler's criminal trial) that even at-will employees are only ever non-renewed or terminated for cause," this statement "functionally transforms Ms. Vandermeulen's employment from at-will to only terminable for cause." *Id.* ¶¶ 76, 169. But Vandermeulen does not allege that Ziegler, or anyone else, told *her* this, and in light of her contract providing that she was an "at-will" employee, Vandermeulen cannot plausibly allege that Ziegler's statement created a "mutually explicit" understanding that Vandermeulen's employment was anything but at-will. *Pittman v. Wilson Cnty.*, 839 F.2d 225, 228 n.6 (4th Cir. 1988). Because Vandermeulen "was merely an 'at-will' employee, she did not have a property interest in her position of employment … [and] was not entitled to the protections of due process with respect to the termination of her employment." *Id.* at 230.

## III.   CONCLUSION

Accordingly, it is hereby

**ORDERED** that Defendant Scott Ziegler's Motion to Dismiss (ECF 22) is **GRANTED IN PART AND DENIED IN PART**; and it is further

**ORDERED** that Defendants Loudoun County School Board and Aaron Spence's Motion to Dismiss (ECF 25) is **GRANTED IN PART AND DENIED IN PART**; and it is further

**ORDERED** that Counts I, II, V, VI, IX, and X are **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

/s/
Michael S. Nachmanoff
United States District Judge

June 28, 2024
Alexandria, Virginia